UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 6:06-CR-90-KKC-HAI |
| v. | ) ) | RECOMMENDED DISPOSITION |
| DONALD E. WATTS, | ) ) | |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Caldwell (D.E. 90), the Court considers reported violations of supervised release conditions by Defendant Donald Watts.

Judge Caldwell entered a judgment against Defendant in March 2007 on one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). D.E. 71. Defendant received a sentence of 102 months of imprisonment followed by lifetime supervised release, pursuant to 18 U.S.C. § 3583(k). *Id.* at 2-3. Defendant began his supervised release on January 6, 2014. On January 3, 2014, upon petition of the United States Probation Office ("USPO"), Judge Caldwell modified Defendant's conditions of release to add additional special conditions. D.E. 86. On March 15, 2017, the USPO issued a Report on Person Under Supervision advising that Defendant possessed a thumb drive with sexually stimulating material. D.E. 87. Judge Caldwell approved the USPO's recommendation that Defendant continue on supervision due to the images being of him and his adult girlfriend. *Id.*

1

**I.**

On November 23, 2021, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations. According to the Report:

> On September 11, 2021, at 3:09 A.M. Donald Watts was arrested by the Richmond, Kentucky Police Department and charged with Drug Paraphernalia – Buy/Possess, Possession of a Controlled Sub[s]tance First Degree First Offense Methamphetamine, and Ope[r]ating on a Suspended or Revoked License. Possession of a Controlled Sub[s]tance First Degree First Offense Methamphetamine is a violation of KRS 218A.1415, a Class D Felony, punishable by a term of imprisonment of one to five years. The case is currently pending in Madison District Court Case No. 21-F-00944. On September 11, 2021, he was released on an administrative release bond. As of the date of this report the case was sent to the Grand Jury for an indictment, and there is no scheduled court date. Please see the attached uniform citation dated September 11, 2021, for further details of the arrest.

Stemming from this conduct, Violation #1 charges Defendant with violating the condition requiring him to not commit another federal, state, or local crime. This is a Grade B Violation.

The Report also states:

> On September 14, 2021, Mr. Watts left a voicemail advising he had been . . . arrested in Madison County, Kentucky and was out on bond. Since his release he stated he was res[i]ding in Casey County, Kentucky, with his mother. On September 15, 2021, I contacted Mr. Watts at the number provided and he advised he was arrested on a traffic warrant for failure to pay a fine.
>
> On September 15, 2021, Mr. Watts reported as directed to the U.S. Probation Office and advised he was at a gas station in Richmond, Kentucky, when a police officer contacted him. The officer advised Mr. Watts that he had an active warrant. Mr. Watts stated he was standing outside the truck when the officer arrived, and that is why he was not charged with operating on a suspended or revoked license. He admitted he had drove the truck to the gas station, but it close to his residence. This officer verified the arrest warrant and his case was sent to the Western District of Kentucky for Courtsey [sic] Supervision. However, when a record check was conducted it was discovered Mr. Watts received additional charges as stated in Violation Number One.

> On November 19, 2021, U.S. Probation Officer Chris Deglow of the Western District of Kentucky, called an[d] advised Mr. Watts was in custody in Madison County, Kentucky, Detention Center on new charges, as noted in violation number three of this report. During a criminal records check it was discovered the pending charged as noted in violation number one.

Stemming from this conduct, Violation #2 charges a violation of the condition requiring Defendant to answer all inquiries by the probation officer truthfully and follow the instructions of the probation officer. This is a Grade C violation.

Additionally, the Report states:

> On November 3, 2021, at 3:54 A.M. Mr. Watts was arrested by the Richmond, Kentucky, Police Department and charged with No Registration Receipts, Operating on a Suspended or Revoked License, Possession of a Controlled Sub[s]tance First Degree First Offense Methamphetamine, Possession of a Controlled Sub[s]tance First Degree First Offense Heroin. Possession of a Controlled Sub[s]tance First Degree First Offense Methamphetamine is a violation of KRS 218A.1415, a Class D Felony, punishable by a term of imprisonment of one to five years The case is currently pending in Madison District Court Case No. 21-F-01116. As of the date of this report Mr. Watts continues to be in custody at the Madison County, Kentucky, Detention Center. Please see the attached uniform citation dated November 3, 2021, for further details of the arrest.

Violation #3 charges another violation of the condition requiring Defendant to not commit another federal, state, or local crime. This is also a Grade B violation.

## II.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on December 30, 2021. D.E. 95. The Court set a final hearing following Defendant's knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *Id*. The government moved for interim detention; Defendant argued for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on March 14, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 106. Defendant waived a formal hearing and stipulated to Violation #1 as set forth in the Report, and the government made an oral motion to dismiss Violations #2 and #3. *Id.*

The parties presented a jointly recommended sentence of four months of imprisonment followed by five years of supervision.[1] The Court found Defendant to be competent to stipulate to Violation #1 and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

Defendant's lifetime supervision was imposed prior to the Sixth Circuit's decision in *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), which requires close examination of the imposition of a lifetime term of supervised release and accompanying special conditions. Accordingly, the Court addresses herein the special conditions for sex offenders in light of *Inman*.

### III.

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying judgment in this District.

---

[1] The parties initially stated that the intended to present different sentencing recommendations. However, after the government's presentation, defense counsel conferred with Defendant and stated they concurred with the government's recommendation.

Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 18 U.S.C. § 2252(a)(4)(B) is a Class C felony. *See* 18 U.S.C. § 2252(a)(4)(B); 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-439 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would constitute a Grade B violation. Given Defendant's Criminal History Category of I (the category at the time of the conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is four to ten months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violations. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, under 18 U.S.C. § 3583(h), he faces a lifetime maximum term of supervised release following revocation.

At the final hearing, the Court addressed whether revocation is mandatory under 18 U.S.C. § 3583(g)(1). Because Violation #1 does not charge Defendant with violating the condition prohibiting him from possessing a controlled substance, the Court found that

5

revocation is not mandatory under § 3583(g). The parties did not oppose this finding. However, the presence of a Grade B violation means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Thus, revocation is appropriate in this case due to the nature of the violation.

## IV.

As noted, the parties jointly recommended a sentence of four months of imprisonment followed by five years of supervision. The Court finds the recommendation to be appropriate under the circumstances.

The government first provided support for the recommendation during the sealed portion of the final hearing, which the Court has fully evaluated. The government then focused on the nature and circumstances of the original offense, Defendant's history and characteristics, and the breach of the Court's trust. The government noted that Defendant's success on supervision for over eight years prior to the violations is a mitigating factor. Further, the government stated that the conduct comprising the violations is unrelated to the underlying conviction. The government also argued that Defendant's omission as to some of the details surrounding his arrest reflects an isolated incident of poor decision making. The government stated it believes Defendant got in over his head with the wrong people and felt pressured to support his girlfriend's addiction.

Defense counsel concurred with the government's recommendation and stated that Defendant's state charges are still pending.

While directly addressing the Court, Defendant apologized and stated that he is embarrassed by his conduct.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range of four to ten months. The Court recommends revocation with a four-month term of imprisonment and a five-year term of supervision.

Regarding the circumstances of the offense of conviction, possession of child pornography causes great harm to the victims. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that the "circumstances of the offense" described in 18 U.S.C. § 3553(a)(1) refers to "the original offense of conviction"). Such pictures, especially when unleashed on the web, can effectively become immortal. However, Defendant's violative conduct is unrelated to his original offense.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. Defendant's violations are disappointing considering his otherwise lengthy term of success while on supervision. Although the Court believes Defendant's apology was sincere, incarceration is necessary to protect the public from further criminal conduct. Defendant's possession of controlled substances while on supervised release promotes drug trafficking, which is dangerous to the public.

Regarding the need to provide education, training, and treatment, the conditions of release provide treatment for substance abuse, mental health, and sexual disorders.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary

7

issue. *See* Guidelines 7 Pt. A(3)(b). Although Defendant had a lengthy term of success while on supervision, he has breached the Court's trust. The Court expects Defendant's strict compliance with the conditions of his release and full transparency with the Court and the USPO in the future.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. Here, as usual, this factor is addressed by imposing a within-Guidelines sentence.

The Court does not recommend reimposition of lifetime supervision. Although lifetime supervision is authorized by 18 U.S.C. § 3583(k), Defendant has been largely successful on supervision and none of his reported violations relate to his underlying offense. Instead, a term of supervision of five years is appropriate to determine whether Defendant's changes are lasting. The standard conditions should be reimposed. In light of the Sixth Circuit's decision in *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), the Court will examine each individual special condition. The recommended conditions are as follows:

**SPECIAL CONDITIONS OF SUPERVISION**

1. The defendant shall participate in a program for treatment of mental health/sexual disorders; shall undergo a sex offender risk assessment, psychosexual evaluation and/or other evaluation as needed; be subject to periodic polygraph examinations and/or Computer Voice Stress Analysis (CVSA) testing, at the discretion and direction of the probation officer; and shall follow the rules and regulations of the sex offender treatment program as implemented by the probation office.

2. The defendant shall not consume any alcoholic beverages.

3. The defendant's residence and employment shall be pre-approved by the probation officer and in compliance with state and local law.

4. The defendant shall not frequent, volunteer, or work at places where children under the age of 18 congregate (e.g. playgrounds, parks, day-care centers, public swimming pools, youth centers, video arcade facilities) unless approved by the probation officer, and shall have no contact with victims.

5. The defendant shall not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18 without the permission of the probation officer. This provision does not encompass persons under the age of 18 such as ticket vendors, cashiers, waiters, etc., with whom the defendant must deal in order to obtain ordinary and usual commercial services.

6. The defendant shall not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available.

7. The defendant shall register as a sex offender as prescribed by state law.

8. The defendant shall not possess or use a computer or any device with access to any on-line computer service at any location (including place of employment) without the prior written approval of the probation officer. This includes any Internet Service provider, bulletin board system, or any other public or private network or e-mail system.

9. The defendant shall consent to the U.S. Probation Office conducting unannounced examinations of his computer system(s) and internal/external storage devices, which may include retrieval and copying of all memory from hardware/software and/or removal of such system(s) for the purpose of conducting a more thorough inspection and shall consent to having installed on his computer(s), any hardware/software to monitor computer use or prevent access to particular materials, and to consent to periodic inspection of any such installed hardware/software to insure it is functioning properly.

10. The defendant shall provide the U.S. Probation Office with accurate information about his entire computer system (hardware/software) and internal/external storage devices; all passwords used by him; and, shall abide by all rules of the Computer Restriction and Monitoring Program.

11. The defendant shall not use or possess any removable storage devices to include hard drives, CD/DVD ROM Drives, USB thumb drives.

12. The defendant is prohibited from accessing the Internet via cellular phone, and is prohibited from possessing any cellular phone that has WI-FI connection capabilities. In addition, the defendant is prohibited from utilizing features that allow the exchange of instant messages, data, photographs, and e-mails. The defendant shall only possess one cellular phone, unless otherwise approved by the supervision USPO. Additionally, the defendant is prohibited from making changes in cellular phone or service, without preapproval of the supervision USPO.

   13. The defendant shall submit his person, offices, properties, homes, residences, vehicles, storage units, papers, computers, other electronic communications or data storage devices or media, to a search conducted by a United States probation officer. Failure to submit to a search will be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

   14. The defendant shall provide the probation officer with access to any requested financial information. This special condition for financial disclosure is recommended as a means to allow the U.S. Probation Office to monitor purchases or electronic and/or peripheral devices, as well as any internet service either subscribed to or accessed by him (e.g., amount paid for internet services, exceeds amount approved by the Probation Office, the defendant has purchased more electronic devices than he claims to possess.).

   15. The defendant shall participate in a substance abuse treatment program and shall submit to periodic drug an alcohol testing at the direction and discretion of the probation officer during the term of supervision. Said program may include one or more cognitive behavioral approaches to address criminal thinking patterns and antisocial behaviors. The defendant shall pay for the cost of treatment services to the extent he is able as determined by the probation officer.

In light of *Inman*, these conditions are appropriate for the reasons stated on the record during the March 14 hearing, and as follows:

Special Condition #1, concerning treatment, is necessary in light of Defendant's underlying conviction. His violation behavior also shows he is capable of risky conduct. Continued use of polygraph examinations is warranted because of his initial omissions to the USPO regarding the circumstances of his arrest.

Special Condition #2, prohibiting Defendant's consumption of alcohol is necessary in light of his history of alcohol abuse.

Special Condition #3, concerning pre-approval of Defendant's residence and employment, is needed to help Defendant comply with state sex offender laws.

Special Conditions #4 and #5, concerning contact with minors, are justified based on Defendant's prior possession of child pornography. Following *Inman*, these conditions were

10

rewritten to allow contact with minors upon approval of the probation officer, which was already included in Defendant's original conditions.

Special Condition #6 is crafted to eliminate Defendant's access to pornography. Here, Defendant has demonstrated that he poses a risk to vulnerable victims. Access to sexually stimulating material enhances that risk.

Special Condition #7, requiring Defendant to register as a sex offender as prescribed by state law, is specifically contemplated in 18 U.S.C. § 3583(d).

Special Conditions #8, #9, #10, #11, and #12 regulate Defendant's access to electronic devices and permit inspection by the USPO. These conditions have been updated to address changes in technology. Defendant has displayed skill in using electronic devices such as computers to view pornography. These devices are becoming increasingly difficult to monitor. These conditions will enable the USPO to have knowledge of, and access to, any electronic devices and related hardware and software. These conditions will help deter further criminal and violation conduct and protect the public from the risks associated with pornography use by Defendant. In light of his history, the USPO must be involved in the selection and configuration of Defendant's electronic devices. They need to know what devices and access he has, and what he can do with them. These conditions are not a blanket prohibition, but allow for possession of such items after sufficient safeguards and monitoring strategies are in place, and are not more restrictive than necessary.

Special Condition #13, concerning searches, is authorized by § 3583(d). Because Defendant carries the special risks associated with sex offenders, the USPO needs authority to conduct searches and monitor his compliance with the law.

11

Special Condition #14, concerning financial disclosures, is designed to help the USPO monitor Defendant's purchases of electronic devices, internet services, and anything else implicated by the other conditions of supervised release.

Special Condition #15, concerning substance abuse treatment and periodic testing is necessary in light of Defendant using alcohol in relation to the underlying offense.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. That Defendant, upon his stipulation, be found guilty of Violation #1;

2. The government's motion to dismiss Violations #2 and #3 be granted;

3. Revocation and imprisonment for a term of four months; and

4. Supervised Release for a term of five years, with the standard conditions included in Defendant's Judgment (D.E. 71) and the special conditions described above.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **five days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Caldwell's docket upon submission. If

Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 18th day of March, 2022.

Signed By:
Hanly A. Ingram
United States Magistrate Judge